## Case No. 10,714.

### Ex parte PARIS.

[3 Woodb. & M. 227.] [1]

Circuit Court, D. Maine. Oct. Term, 1847.

MARSHAL—FEES—FOR SERVICE—AIDS—DUTIES COVERED BY PER DIEM ALLOWANCE.

1. A fee is allowable to a marshal as for "a service," when a writ or warrant is executed by him; but not otherwise. Charges for "aid" or assistance are allowed where the nature of the case renders it proper, and the amount claimed is shown to be reasonable.
[Cited in Jerman v. Stewart, 12 Fed. 274.]

2. A fee is allowed for a commitment, when made under an order of the court, or in execution of a mittimus, but not in other cases.

3. A fee is proper for a discharge when a prisoner is released entirely from custody; but not when brought into court for trial or testifying.

4. A charge for keeping prisoners, at seventy-five cents a day, when their board is paid for by the government, and they are in prison, and the court not in session, is inadmissible, either as reasonable or under any statute of the state of Maine.

5. An order to commit a witness for not recognizing in a criminal case to appear and testify, or for a contempt of court, need not be in writing and sealed; but it is best to enter it on the records, and a copy be taken by the marshal to file with the jailor.

6. Many of the duties performed by marshals during the sittings of courts, are considered as covered and paid for by the per diem allowance for attendance on courts, and must not be charged as independent services.

This was a claim by Virgil Paris, as marshal, against the United States, for certain fees and expenses connected chiefly with the indictments against Cyrus Libbey, tried here in July, 1846; though there were some other charges for other terms and other prisoners. The district judge declined to certify that a portion of the claims was legal, and the marshal being dissatisfied with his opinion, applied to the presiding judge of the circuit court to examine into the claims and objections, and certify to the allowance of the whole. This being in the nature of an appeal from the decision of the district judge, the facts and law were heard before Woodbury, J., in July, at the adjourned session of the May term, 1847, and an opinion given upon them, Oct., 1847. The particulars necessary to an understanding of the case will appear in that opinion.

Mr. Howard, for the marshal.
A. Haines, Dist. Atty., for the United States.

WOODBURY, Circuit Justice. The particular claims deemed exceptionable in this case, by the district judge, are those for "aid" in the service of a warrant to receive certain witnesses under arrest, from the marshal of the state of Massachusetts. Also, for "service" of an order to commit the same witness-

1 [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

es when failing to procure recognizances for their appearance to testify, and for "commitment" of them under the same order. Also for "service" of an order to bring them into court and a "discharge" for the same when once more returned to prison, and for another "service commitment" and "discharge" under one and the same precept as often as the prisoners during the trial at the session of the court were remanded or brought up to testify under a verbal direction of the court. The marshal made a claim, likewise, for different fees, under an amended return, after the opinion of the district judge was given against the correctness of some of the charges already mentioned. The amended claim was in the words for "keeping said prisoners and attending court from September 6th, 1845, to April 6th, 1846, inclusive, 211 days at 75 cents for every twelve hours each, $3798," and $160.50 for keeping another prisoner from April 6th to July 22, 1846. And $1765.50 costs more for like duty from April 6th to July 22, 1846. All of these amounted to $5724.

The various charges first made are attempted to be justified on two grounds. One is by acts of congress, and the other, a settled usage supposed to exist in favor of those charges in other districts of this circuit. In respect to the acts of congress, there is no expression, which in terms covers the first charge for "aid" or assistance in executing a precept. But as such "aid" is often necessary and is so expensive as not probably to be intended to be covered under the fee for "service," and as it is understood to be customary to allow it in this state in the state courts under like circumstances, if shown to have been required, I should be disposed to certify what seemed to be reasonable on such evidence being produced. But, in this case, as the prisoners were only witnesses and not held for any crime, and were paid $1.50 per day during their detention, and boarded independently, it is not to be presumed, without strong positive proof, that they were anxious to escape and that their situation warranted any expensive "aid" to keep them safely. See, for such allowances to them, Act May 20, 1826 (4 Stat. 1749).

In relation to the next claim for several services and commitments and discharges under one precept, I understood that, by the amended return, it is mostly abandoned and thereby reduced to only one "service," "commitment" and "discharge" on one precept, but a charge substituted therefor of about $57.64, under a state law. State laws, by an act of congress, are to govern for duties performed by the marshal which are not specifically provided for by congress. See Act Feb. 28, 1799, § 1 (1 Stat. 624). Looking first then to the particulars so provided for, the charge for one "service" for one precept is of course proper. But in regard to the fee claimed for a "commitment" in the service of that precept, I entertain little doubt that the

fee allowed in the act of congress for "service" is intended to cover the duty of commitment as a part of the service, when the service is made of an ordinary writ or warrant, by arresting and committing the party. The terms "commitment" and "discharge," as used in the statute, were meant to apply rather to "orders," and the commitment and discharge under these orders, than to imprisonment under a writ, or to the bringing up of a prisoner under a habeas corpus. The fee for service covers the execution of them usually. The fee for a "commitment" can therefore hardly be considered as a proper charge in other cases than an order, unless when a criminal is sent to prison under a final sentence and under what is called often in common parlance a "mittimus." So the fee for a "discharge" is not to be charged when a prisoner is merely removed from one place to another but not released or discharged from the custody of the marshal or of the law. In no sense can the term "discharge" apply to the mere bringing up of the prisoner to testify or to be tried. He is not by that discharged from the custody of the marshal or the custody of the law, or the liability and detention under the original order or precept for his commitment, but he is brought into court only for examination and other purposes connected with his imprisonment, and often without being released or discharged at all, and the marshal has per diem a compensation for that.

When the prisoner is brought up by a regular writ of habeas corpus, or imprisoned by a regular warrant, either of these acts is the "service" of the writs, and is to be paid accordingly. But doing either of these is not of course "a discharge" of the prisoner from custody, and a fee for such "discharge" is not permissible till he is allowed to go at large and is at liberty entirely. When merely bringing up prisoners, or sending them back, it is understood that in some districts of the United States, the courts issued formal warrants in writing, and signed and sealed to bring up parties or witnesses who are in custody, or to send them back, and however often this may take place to the same individual and for however short a period. When this practice is followed, the marshal can properly charge for a "service" of each of them, when serving them as required. But in districts where this practice is not followed, after a party or witness is once in prison and an order of the court is made to bring them up for trial or to testify, and another order is made to commit them during an adjournment, or during a session, when other business demands precedence, these orders are not writs nor warrants, and there is to be no fee as for the service of writs or warrants. Such orders may be sufficient to justify the marshal and jailor in conjunction with the original writ. And where no previous writ existed, and indeed in all cases, the clerk might well make an

entry of the order on the docket and record of the case, and give a copy to the marshal to be left with the jailor. That record usually suffices. In England such orders are usually parol. 1 Chit. Cr. Law, 73; Moore, 408; Still v. Walls, 7 East, 533. Though there, and probably here, a final commitment must be by written warrant, signed and sealed, and setting out the offence. 2 Hawk. P. C. c. 16; 1 Chit. Cr. Law, 109; 2 Hale, P. C. 122. Here, as there, however, arrests may often be made without such warrants; but if commitment follows, it is better always to have a written warrant, or a record made of the order and a copy of that sent with the prisoner, showing in writing the grounds of the imprisonment, to the jailor, who is here a separate, and in some degree, independent office from the marshal. 1 Chit. Cr. Law, 73.[2]

In respect to fees, however, an order of commitment, whether unwritten or written, is not such a writ or warrant as to allow a charge for "service" in executing it; nor can a "service" be allowed for a mere "commitment," under an order, when no warrant, whatever, actually issued, though it might have been expedient to issue one; or when only a verbal order was given,—the original written warrant still being in force. . But for such a duty as the last, the fee for a "commitment" seems proper under the order to imprison, or, in other words, remanding the prisoner into close custody. The only plausible objection, then, to the allowance of this fee for a commitment, is that the duty is performed during the session of the court, and while he is paid a per diem for his services. It is argued that this prevents any compensation for such a special act, on the ground that it is covered by the general per diem pay of five dollars. That general fee for attendance on the court, would probably reach the keeping of peace and regularity during its sessions, taking care of prisoners in custody,—whether criminals or witnesses, —and executing the various orders of the court, about bringing them up, or into court. But where a "commitment" is one of these orders, it may be proper that the assigned fee for that should be paid in addition, though it happen during the regular term of the court, and by an order made in court. There are some reasons for it, though others exist against it; and I am not satisfied, fully, that it should be disallowed, considering that the statute expressly gives it as well as a per diem, though a "service" cannot be paid also in such cases, that being applicable to the execution of only writs and warrants, or executions, rather than mere orders. The amended return presents a still different claim and one of a very large

[2] "Where a party is in court, an usher may be put over him: but if he be out of view of the justices, he cannot be arrested without process." Year Books, 10 Hen. VII. pl. 17, p. 17; 27 State Tr. 1071.

amount. It is asked for by virtue of the act of March 3, 1841, which provides, that for items not specified in acts of congress, the same allowance shall be made as is made in the highest court of the state where the service is performed. 5 Stat. 427. A statute of Maine enacts, that "for the officers attending court and keeping the prisoner in criminal cases seventy-five cents for every twelve hours and in that proportion for a greater or less time." Rev. St. p. 646, c. 151, § 4.

The items, claimed under the state laws by the amended returns, amount to $5724. They do not seem to me to be covered by the language of those laws, or the practice of the state courts under them, or reasons growing out of the nature of the case. The language is, "for attending court and keeping prisoners," "seventy-five cents for every twelve hours." This law in words applies only to the keeping of prisoners during the session of the court. In practice it is understood to have been applied during sessions only to cases of justices' courts and other special ones, where no per diem for attendance is provided for, as it is provided in another part of the statute for other courts, and has never been extended beyond the session after the justice or special court adjourns, because the prisoner, after that, is either discharged entirely or committed to prison for safe keeping. So in the cases under consideration, the prisoners were committed or discharged upon the adjournment of the court; and if this statute applied to the ordinary courts and attendance on them at their ordinary sessions, it would furnish no ground for the allowance except during the session. But it has not been considered as applicable to such courts even during their stated regular sessions—as it is the duty of the sheriff to attend them, and receive for his services there $5 per day. Much less can it have been designed for a vacation of any court, when prisoners as here are kept in prison, and their board otherwise paid by the government during the whole time. A different construction would require a double payment or allowance for board. But it is urged that some special reasons exist in this case for the charge, in the fact that the jailor, though taking and boarding the prisoners, objected to being held responsible for them, and that the marshal was responsible in law during all the period. Nothing however is seen by me in the form of the original process or order, in this case, which would exonerate the jailor from his ordinary responsibility after having received the prisoners, and charging and being paid for their board. Nor do I see anything increasing the liability of the marshal here beyond what it is in cases generally. The original warrant or precept is under seal and in the usual form.

The subsequent orders to bring up the prisoners to testify, probably need not be under seal—in such a case—though they ought to

be minuted by the clerk on the record. And it would be safe to give the marshal a copy of them when asked, as was done in Moor's Case—one of those under consideration. This could be left with the jailor, when wishing it. Prisoners like these in Libbey's Case are guilty of no crime, and are not under arrest usually by any warrant. They are in most cases committed in the presence of the court for a neglect or inability to procure recognizance. See Judiciary Act Sept., 1789, § 33 [1 Stat. 91]. An order is all which is needed by the marshal for his justification, when they are so committed; and he is compensated for committing them then by his general per diem, and the fee for a "commitment" under the order. If they were at first, as here, out of court, and taken into custody elsewhere, then his regular warrant which for that existed here, is his justification for that, and his fee for the "service" of it is his compensation for that duty. The prisoners, for most purposes, in either case, are in his keeping from the first arrest till the final discharge. They are held under the original precept, when one has issued, or under the original order of commitment in court, when put into custody in that way, or by the intermediate order of the court, from day to day, when such are issued. An order to bring the prisoners up is not to change that custody as regards the marshal, but merely the place of it, to the court-room, or before the judges, instead of the jail, where he may have before employed the jailor to aid him in this safe keeping. [Randolph v. Donaldson] 9 Cranch [13 U. S.] 76. The marshal is the officer to whom the United States look for the prisoners, though the state jails are authorized to be used by him, and if the prisoners are thus lost without his fault, he may be exonerated. Id. 76, 85. But it is in law still his keeping and his responsibility in all other cases, as much as in this.

In respect to the usage for allowance in like cases in other districts some inquiry has been made. In two districts where warrants to commit and writs of habeas corpus to bring up, are in all cases used on such occasions, a charge for the "service" of each of them when so issued and served, is of course, proper. But if another fee for a "commitment" or a "discharge" is also taxed in such a case, I think it is erroneous, as being in my view, proper only in the circumstances before mentioned. And in no district is there an allowance found for "service," except where a writ or warrant actually issued and was in fact, served; nor in any of them is a charge made and allowed by any state statute, such as is presented here by the amended return.

The conclusions on this matter, then, may be summed up as these. A fee for a "service" is allowed as a proper charge when any writ or warrant is executed, and for "aid," when it is necessary, and reasonable in amount. A fee is allowed for a commitment when a person is imprisoned under a final judgment, or under an order of the court, and once for every such order. And for a "discharge," a fee is also allowed where a prisoner is set at large, free from any custody, whatever. But none of these are allowed except in the cases enumerated as proper for each.